1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9

United States of America,

10

       Plaintiff,

11

vs.

12

Olga Clarissa Ortega,

13

       Defendant.

14

CR-10-2444-TUC-DCB-DTF

**REPORT AND RECOMMENDATION**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

     Pending before the Court are Defendant's Motion to Dismiss Counts 2-15 for Multiplicity (Doc. 12); Motion to Dismiss Indictment for Lack of Jurisdiction (Doc. 19); Motion to Dismiss Counts 2, 5, 8, 12, and 13 for Lack of Jurisdiction (Doc. 31); and Motion to Dismiss Counts 5, 6, and 7 (Doc. 32). The government responded in opposition to these motions. (Docs. 14, 23, 34, and 35.) Defendant replied to the opposition to the Motion to Dismiss Counts 2, 5, 8, 12, and 13. (Doc. 37.) This matter came before Magistrate Judge Ferraro for a hearing and a report and recommendation as a result of a referral, pursuant to LRCrim 5.1. Argument on Defendant's motions was heard on March 22, 2011, and May 3, 2011. (Docs. 29, 38.) Defendant was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement. The Magistrate Judge recommends that the District Court, after its independent review, grant in part and deny in part Defendant's motions.

     Also pending before the Court is Defendant's Motion to Grant Full Faith and Credit

1  to State Court Judgment (Doc. 33), to which the government responded in opposition (Doc.

2  36). At the May 2, 2011 evidentiary hearing, the parties requested this motion be heard by

3  the District Court as a motion in limine. Thus, this report does not contain a recommendation

4  as to the issues raised in that motion.

5  ## I.  FACTUAL BACKGROUND

6  In October 2005, Defendant filed an application for a United States Passport at the

7  United States Consulate in Nogales, Sonora, Mexico. Defendant claimed in the application

8  and under oath during the application process that she was a United States citizen. Defendant

9  submitted a delayed birth certificate issued to her by a California Superior Court showing

10  that she was born in the United States. Counts Two (False Statement in a Passport

11  Application), Five (False Statement in an Application for Entry Document), Eight (False

12  Claim to United States Citizenship), Twelve (Oral False Statements), and Thirteen (Written

13  False Statements) are based on this conduct. (Doc. 5.)

14  On January 23, 2008, at the Pima County Courthouse, Defendant filed another

15  application for a United States Passport claiming to be a United States citizen and submitting

16  the same birth certificate issued to her by a California Superior Court. Counts Three (False

17  Statement in a Passport Application), Six (False Statement in an Application for Entry

18  Document), Nine (False Claim to United States Citizenship), and Fourteen (Written False

19  Statements) are based on this conduct. (*Id.*)

20  On May 28, 2010, at the Pima County Courthouse, Defendant filed another

21  application for a United States Passport claiming to be a United States citizen and submitting

22  the same birth certificate issued to her by a California Superior Court. Counts Four (False

23  Statement in a Passport Application), Seven (False Statement in an Application for Entry

24  Document), Nine (False Claim to United States Citizenship), and Fifteen (Written False

25  Statements) are based on this conduct. (*Id.*)

26  Thereafter, on August 22, 2010, Defendant applied for admission into the United

27  States through the port of entry in Nogales, Arizona, claiming to be a United States citizen.

28

1  Counts One (Attempted Reentry After Deportation) and Eleven (False Claim to United States

2  Citizenship) are based on this conduct. (*Id.*)

3  ## II. DISCUSSION

4  Defendant's motions seek to dismiss Counts 2-15 for multiplicity, the entire

5  indictment and, alternatively, Counts 2, 5, 8, 12 and 13 for lack of jurisdiction, and Counts

6  5, 6 and 7 for failure to state an offense.

7  ### A.   Motion to Dismiss Counts 2 - 15 for Multiplicity

8  An indictment may not charge a single offense in several counts without offending

9  the rule against multiplicity. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir.

10  1976). Defendant argues that Counts 2 through 15 should be dismissed because they are

11  based on "one course of action" to obtain a United States passport.[1] Therefore, Defendant

12  reasons that charging separate counts is multiplicitous. The government counters that the

13  same underlying conduct may give rise to multiple charges because each crime requires at

14  least one independent element.

15  First, Defendant argues that because all of her actions occurred in a continuous course,

16  the counts in the government's indictment are multiplicitous. The Ninth Circuit has not

17  established a bright line rule "dividing charges comprising a single offense from those

18  comprising separate and distinct offenses." *Id.* To determine whether multiplicity lies, "[t]he

19  test is whether the individual acts are prohibited, or the course of action which they

20  constitute. If the former, then each act is punishable separately . . . If the latter, there can be

21  but one penalty." *Blockburger v. United States*, 284 U.S. 299, 302 (1932) (two drug sales

22

23  [1]      Defendant included Count 11 (false claim of United States citizenship on

24  August 22, 2010, at the time of her attempted entry into the United States) in her motion.
   However, she argues for its dismissal only on the general ground that the indictment is

25  "permeated with multiplicity." (Doc. 12 at 4.) Because Defendant made no meaningful

26  argument as to Count 11, the Court does not include it in the analysis. Further, the two
   charges arising from Defendant's alleged actions on August 22, false claim to United

27  States citizenship and illegal reentry, are not redundant.

28

1   made at separate times do not constitute a continuous offense); *compare In re Snow*, 120 U.S.

2   274, 286 (1887) (cohabiting with multiple women constitutes a continuous offense). Separate

3   false claims or documents may give rise to multiple counts even where the substance of those

4   claims or documents remain constant. *See United States v. Moore*, 653 F.2d 384, 391 (9th

5   Cir. 1981) (phone calls); *United States v. Kennedy*, 726 F.2d 546, 548 (9th Cir. 1984) (bank

6   documents). To constitute a continuous course of action, the offense must have duration, yet

7   not consist of a collection of isolated acts. *See In re Snow*, 120 U.S. at 281.

8        Here, Defendant submitted a completed, and distinct, passport application to

9   governmental entities on three dates spanning a nearly five-year period: October 27, 2005,

10   January 23, 2008, and May 28, 2010. While the goal of the application submissions remained

11   constant, each submission occurred within the course of a single day. Each instance must be

12   viewed as a distinct action and the requisite duration for a continuous course of action has

13   not been met.

14        Second, Defendant argues that her actions on each of the three dates can only be

15   charged as one crime, not multiple crimes for each application. "Often a course of criminal

16   conduct will entail the violation of several statutes. In those cases, if the statutes are not

17   redundant, the prosecutor may charge the defendant with violating one or all of the statutes,

18   and the defendant can be convicted of violating more than one statute." *United States v.*

19   *Duncan*, 693 F.2d 971, 975 (9th Cir. 1982). Charges are not multiplicitous if "each statute

20   requires proof of an additional fact which the other does not." *Morey v. Commonwealth*, 108

21   Mass. 433, 434 (1871).

22        To gauge potential redundancy, the Court must first look at the elements of each

23   statute. For each of the three dates at issue, the government charged Defendant under four

24   statutes, 18 U.S.C. §§ 911, 1001(a)(3), 1542, and 1546, which require the following

25   elements:

26        Section 911 (false representation of citizenship) requires proof of (1) a false
         representation of (2) United States citizenship.

27

28                                            - 4 -

Section 1001(a)(3) (written false statements) requires proof of (1) a knowingly false writing (2) which is material and (3) regarding any matter within the jurisdiction of a branch of the United States government.

Section 1542 (false statement in application for passport) requires proof of (1) a knowingly false representation (2) in an application for a passport (3) with intent to induce the issuance of a passport under the authority of the United States.

Section 1546(a) (fraud and misuse of visas, permits, and other documents) requires proof of (1) a knowingly false representation (2) which is material (3) and under oath or penalty of perjury (4) in an application, affidavit, or other document required by the immigration laws or regulations.

Section 911's requirement that the representation be about United States citizenship is a unique element not found in any of the other statutes. Each of the other statutes requires elements not found in § 911, thus, this provision can be charged along with each of the other statutes.

Section 1542 requires proof that the defendant intended to induce the issuance of a passport, which is not found in §§ 1001 or 1546. Conversely, §§ 1001 and 1546 both require proof of materiality. Because § 1542 has an element not found in either of those statutes, and those statutes also contain an element not found in § 1542, they each may be charged together.

A comparison of § 1001 to § 1546 requires a closer analysis. Both statutes require a written knowing false representation and proof that the representation is material. The remaining element of § 1001 is that the false representation be about a matter within the jurisdiction of one of the government's three branches. This element is contained in § 1546's requirement that the representation be in an application for a United States' immigration document. Thus, § 1001 is entirely subsumed within § 1546.

The § 1001(a)(3) charges, Counts 13-15, and the § 1546 charges, Counts 5-7, are multiplicitous. *Cf. United States v. Yin*, 935 F.2d 990, 992, 994 (summarizing that court suspended imposition of sentence on three counts under § 1546, while sentencing on three counts under § 1001, both sets of counts stemming from three false statements in a permanent resident application). Despite this finding, the motion to dismiss is premature. The

- 5 -

1   government is not precluded from indicting Defendant and going to trial on Counts 5-7 and

2   13-15, as it might prove the three elements under § 1001(a)(3), while failing to prove the

3   additional element necessary for a § 1546 conviction, that the false representation be made

4   under oath. However, Defendant cannot be convicted on both Counts 5-7 and Counts 13-15.

5   After trial, the remedy is to vacate any multiplicitous convictions. *See Ball v. United States*,

6   470 U.S. 856, 864-65 (1985); *United States v. Schales*, 546 F.3d 965, 978 (9th Cir. 2008);

7   *United States v. Ankeny*, 502 F.3d 829, 838-39 (9th Cir. 2007).

8       Third, Defendant argues that the § 1001 charges contained within Counts 12 and 13

9   are multiplicitous. In these counts, the government charges that, on October 25th, 2005,

10  Defendant falsely represented orally, and contemporaneously in a written application, that

11  she was a United States citizen and that she was born in Monterey Park, California. Count

12  12 charges an oral statement under § 1001(a)(2) and Count 13 charges a written statement

13  under § 1001(a)(3).

14      "[W]here identical false statements, in either oral or written form, are made in

15  response to identical questions, the declarant may be convicted only once." *United States v.*

16  *Olsowy*, 836 F.2d 439, 443 (9th Cir. 1987) (analyzing oral and written statements under

17  § 1001). However, if a declarant's repetition of an initial false statement in answer to the

18  same repeated question further impaired the operations of government, two convictions may

19  stand. *See United States v. Salas-Camacho*, 859 F.2d 788, 791 (9th Cir. 1988) (analyzing

20  statements made concurrently to different officials with distinct duties) (citing *Olsowy*, 836

21  F.2d at 443).

22      Here, Defendant is charged with making essentially contemporaneous identical

23  statements, merely in different forms (each one under penalty of perjury or oral oath), to a

24  consular official. At oral argument, the government could provide no meaningful distinction

25  between the two representations nor did it make any showing that the second representation

26  additionally impaired governmental operations. Therefore, the motion to dismiss is well-

27  founded as to Counts 12 and 13, because the two charges constitute a single offense and are

28                                                      - 6 -

1    multiplicitous. *See UCO Oil Co.*, 546 F.2d at 838.

2            **B.   Motion to Dismiss Indictment for Lack of Jurisdiction**

3            Defendant argues that this Court lacks jurisdiction because the question of

4    Defendant's citizenship is pending before a higher court and that issue is central to each of

5    the counts in the indictment.

6            In December 1998, Immigration Judge Ronald L. Mullins found that Defendant was

7    a citizen of Mexico and she was removed from the United States. In 2005, Defendant moved

8    to re-open that hearing based on new evidence; that motion was denied. In 2006, Defendant

9    appealed that decision to the Ninth Circuit Court of Appeals, and the appeal remains pending.

10           Defendant cites law supporting the proposition that when an appeal is taken to a

11   circuit court, the district court is divested of jurisdiction to decide any issues that are on

12   appeal. This rule applies when a direct appeal is taken in a case, during which the trial court

13   loses jurisdiction. *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984). That rule

14   has no applicability to Defendant's circumstances. She does not have an appeal pending in

15   this case, rather, she has a collateral appeal pending from the denial of her motion to reopen

16   her immigration case. Further, a ruling on that appeal won't necessarily resolve the question

17   of Defendant's citizenship because the only issue before the appellate court is whether to

18   reverse the denial of her request to re-open her immigration case.

19           The pendency of Defendant's immigration appeal has no bearing on this Court's

20   jurisdiction and the motion should be denied.

21           **C.   Motion to Dismiss Counts 2, 5, 8, 12 and 13 for Lack of Jurisdiction**

22           Defendant argues there is no jurisdiction over Counts 2, 5, 8, 12 and 13 because the

23   acts are alleged to have occurred outside United States territory. In the indictment, the

24   government asserts that the acts alleged in each of these counts took place at the United

25   States Consulate in Nogales, Sonora, Mexico. (Doc. 8.) The government cited 18 U.S.C.

26   §7(3) as a basis for jurisdiction, which defines special territorial jurisdiction. (*Id.*) In its

27   response to the motion, the government states that citation was in error. (Doc. 34 at 2-3.)

28                                           - 7 -

1    Instead, the government relies upon extraterritorial application of each of the statutes.[2]

2          To assess whether a statute applies outside United States territory the Court looks to

3    congressional intent. *United States v. Vasquez-Velasco*, 15 F.3d 833, 839 (9th Cir. 1994).

4    Although there is a presumption against extraterritoriality, the presumption does not apply

5    to all criminal statutes, such as ones that are not tied to locality but to the government's right

6    "to defend itself against obstruction, or fraud wherever perpetrated." *Id.* at 839 n.4. When

7    evaluating a criminal statute, courts:

8          may infer extraterritorial application is appropriate from the nature of the
     offense and Congress' other legislative efforts to eliminate the type of crime
9    involved . . . Where the locus of the conduct is not relevant to the end sought
     by the enactment of the statute and the statute prohibits conduct that obstructs
10   the functioning of the United States government, it is reasonable to infer
     congressional intent to reach crimes committed abroad.

11   *Id.* at 839 (quotations omitted). However, courts will not infer extraterritorial application of

12   a statute if it would violate international law principles. *Id.* The two principles recognized

13   under international law relevant to this analysis are:

14
15         the objective territorial principle, under which jurisdiction is asserted over acts
     performed outside the United States that produce detrimental effects within the
     United States, and the protective principle, under which jurisdiction is asserted
16   over foreigners for an act committed outside the United States that may
     impinge on the territorial integrity, security, or political independence of the
17   United States.

18   *Id.*

19         The Ninth Circuit holds that: "[a]cts done outside a jurisdiction, but intended to

20   ―――――――――

21       [2]      The government also cites 18 U.S.C. § 3238 as a basis for jurisdiction, and
     argues the consulate is United States' soil. First, § 3238 establishes the location for trial
22   of offenses occurring outside of any district, which is a matter of venue not jurisdiction.
     *See Haddad v. United States*, 349 F.2d 511, 515 (9th Cir. 1965); *United States v.*
23   *Velasquez*, 697 F. Supp. 292, 294 (S.D. Tex. 1988) (citing *United States v. Williams*, 589
     F.2d 210, 212 (5th Cir. 1979)). Second, at the time of argument, the government did not
24   have authority for its proposition that the consulate is United States' territory and the
     Court's review of the law suggests otherwise. *See United States v. Corey*, 232 F.3d 1166,
25   1178 (9th Cir. 2000) (recognizing that embassy property "remains the territory of the
     receiving state, and does not constitute territory of the United States.") (quoting *McKeel*
26   *v. Islamic Republic of Iran*, 722 F.2d 582, 588 (9th Cir. 1983)).
27
28

produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." *Rocha v. United States*, 288 F.2d 545, 548 (9th Cir. 1961) (quoting *Strassheim v. Daily*, 221 U.S. 280, 285 (1911)).   In *Rocha*, the court specifically held that the district courts have extraterritorial jurisdiction over criminal charges alleging a violation of 18 U.S.C. § 1546 (False Statement in an Application for Entry Document, Count 5), because that statute was passed to preserve the United States' sovereignty. 288 F.2d at 548, 550 ("crimes directed toward the sovereign itself may be tried within the jurisdiction even though committed without"). The court explained that the making of false statements and fraudulent documents in an effort to gain entrance into the United States create a detrimental effect on the sovereignty of the United States. *Id.* at 549.

The government argues that there is extraterritorial jurisdiction over the charges under other statutes based on the same logic set forth in *Rocha*. Count 2 (False Statement in a Passport Application, § 1542) and Count 8 (False Claim to United States Citizenship, § 911) both involve fraudulent statements made to establish United States citizenship, which would allow entry into the country as well as other privileges extended to citizens. Therefore, the Court finds the *Rocha* analysis logically extends to these counts and the Court has extraterritorial jurisdiction.

Counts 12 and 13, which charge false statements under § 1001, do not on their face relate to citizenship or entry into the country; therefore, they do not warrant extraterritorial jurisdiction based solely on the *Rocha* analysis. The Court, instead, must assess congressional intent regarding the application of this statute, as discussed in *Vasquez-Velasco*. These counts allege the making of material false statements (oral and written, subsections (2) and (3), respectively) in a matter within the jurisdiction of the executive, legislative or judicial branch of the United States' government. 18 U.S.C. §§ 1001(a)(2), (a)(3). The conduct prohibited is linked not to locality but, rather, conduct that obstructs the functioning of any branch of the government and implicates the government's right to defend itself against fraud. Thus,

the alleged acts produce detrimental effects within the United States and implicate the country's sovereignty. The Court finds there is extraterritorial jurisdiction over the acts alleged in Counts 12 and 13.

Because the Court has extraterritorial jurisdiction over these counts, Defendant's motion to dismiss Counts 2, 5, 8, 12 and 13 should be denied.

**D.  Motion to Dismiss Counts 5, 6, and 7 for Failure to State a Claim**

Defendant argues the Court should dismiss Counts 5, 6 and 7 for failure to state a claim. These counts of the indictment allege that Defendant:

> did knowingly make under oath and under penalty of perjury, and knowingly subscribed as true, any false statement with respect to a material fact in an application, affidavit and other document required by the immigration laws or regulations prescribed thereunder, and knowingly presented such application, affidavit and other document which contains a false statement and which fails to contain any reasonable basis of law or fact, in that while making an application for United States Passport, on each date and at each location listed below, the defendant swore under oath and under penalty of perjury she was a United States citizen, when she then and there well knew she was not a United States Citizen in violation of Title 18, United States Code, Section[] 1546(a).

(Doc. 5 at 2-3.) Defendant argues these counts fail because the document that she is charged with applying for, a United States passport, does not qualify as an immigration document under 18 U.S.C. § 1546(a).

The immigrations laws referred to in § 1546(a) are those set forth in Chapter 12 of Title 8, which covers sections 1101-1537. Under 8 U.S.C. § 1185(b) (subject to Presidential limitations), a citizen must have a passport to depart from or enter the United States. Thus, a United States passport is required under the immigration laws for citizens to travel outside the country. Defendant is correct that Chapter 12 does not encompass passport applications, however, § 1546 requires only that the application be for a document required under the immigration laws not that the application be provided for under those laws. Because there is at least one statutory requirement for a United States passport under the immigration laws referred to in § 1546(a), Defendant's motion to dismiss Counts 5, 6 and 7 fails.

- 10 -

### III.  RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Dismiss Indictment for Lack of Jurisdiction (Doc. 19), Motion to Dismiss Counts 2, 5, 8, 12, and 13 for Lack of Jurisdiction (Doc. 31), and Motion to Dismiss Counts 5, 6 and 7 (Doc. 32). It is further recommended that the Court DENY in part, as to Counts 1-11 and 14-15, and GRANT in part, as to Counts 12 and 13, Defendant's Motion to Dismiss Counts for Multiplicity (Doc. 12).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR-10-2444-TUC-DCB**.

DATED this 3rd day of June, 2011.

D. Thomas Ferraro
United States Magistrate Judge

- 11 -